IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STONE STRONG, LLC, a Nebraska limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>STONE STRONG OF TEXAS, LLC, a Texas limited liability company,<br><br>Defendant. | 4:21-CV-3160<br><br>MEMORANDUM AND ORDER |

The plaintiff, Stone Strong, LLC ("Stone Strong") is a Nebraska company that designs and licenses specialty retaining wall blocks and precast forms for making them—what it calls the "Stone Strong System." Filing 10-1 at 1. And it has registered several "Stone Strong" trademarks. Filing 10-1 at 6-14. The defendant, Stone Strong of Texas, LLC ("Stone Strong of Texas") is a Texas company that provides goods and services relating to the "Stone Strong System" in the state of Texas, and entered into a "Dealer and License Agreement" with Stone Strong pursuant to which it agreed to pay a fee for the right to do so. *See* filing 23-1 at 2-3; filing 1-1.

Stone Strong now alleges that Stone Strong of Texas defaulted on that Agreement and lost the right to use its trademarks. *See* filing 1. And Stone Strong asks the Court to preliminarily enjoin Stone Strong of Texas from doing so. Filing 8. But the Court finds that, despite the merits of Stone Strong's claims, it hasn't shown that it will be *irreparably* harmed in the absence of preliminary injunctive relief. Rather, it could be made whole by money damages. Accordingly, the Court will deny Stone Strong's motion for a preliminary injunction.

BACKGROUND

Stone Strong first registered the trademark "Stone Strong Systems" in 2004. Filing 10-1 at 6. Registrations for "Stone Strong Systems" with an associated logo and for "Stone Strong" followed in 2015 and 2018, respectively. Filing 10-1 at 9, 12.

In 2007, Jody DuBois, a current member and manager of Stone Strong of Texas, was employed by a Texas company that sold products manufactured using Stone Strong's system. Filing 23-1 at 2. He met John Gran, Stone Strong's managing member, and was hired by a company called "Innovative Stone" (another company Gran owned) that used Stone Strong's system pursuant to a license. Filing 23-1 at 3. Eventually, in 2008 or 2009, DuBois leased forms from Innovative Stone and used them to manufacture and sell pre-cast concrete blocks, doing business as Stone Strong of Texas. Filing 23-1 at 3. DuBois says he did so with Gran's full knowledge, and Gran does not contend otherwise. Filing 23-1 at 2-3; *see* filing 25-2.

That arrangement between Stone Strong of Texas and Innovative Stone continued until 2016, when Stone Strong and Stone Strong of Texas entered into the Dealer and License Agreement. Filing 23-1 at 4; *see* filing 1-1. As relevant, under the Agreement, Stone Strong granted Stone Strong of Texas "a royalty-bearing non-transferable right, license and privilege to use the Stone Strong System" to manufacture retaining wall blocks. Filing 1-1 at 1. The Agreement also provided

> (a) that [Stone Strong of Texas] shall have no right to or interest in any trade names or trademarks owned, used or claimed now or in the future by Stone Strong (collectively, the "Trademarks"); (b) the validity of the Trademarks; and (c) that this Agreement does not constitute a grant of any right or license to [Stone Strong of

>  Texas] to use any Trademarks, except to the extent such Trademarks appear in [Stone Strong of Texas]'s advertising or other material relating to the sale of the Blocks. . . .

Filing 1-1 at 2. And Stone Strong of Texas agreed that "[u]pon the termination of this Agreement for any reason, [Stone Strong of Texas] shall discontinue and cease the use of the Trademarks and other advertising materials which use the Trademarks . . . and shall remove all signs and displays relating thereto." Filing 1-1 at 2.

Stone Strong of Texas agreed to pay license fees pursuant to an attached schedule, and "acknowledge[d] that the License Fees include a minimum annual License Fee of $50,000.00 to be paid prior to the end of each 12-month period during the Term." Filing 1-1 at 1; *see* filing 25-2 at 2, 5-7. The Agreement also required Stone Strong of Texas to maintain liability insurance and provide evidence of that insurance to Stone Strong. Filing 1-1 at 3. The initial term of the Agreement was for 3 years beginning on January 1, 2016, and the Agreement automatically renewed on an annual basis unless one of the parties gave 90 days' notice of its intent not to renew. Filing 1-1 at 3.

The license fees were based on the number of different kinds of blocks sold, *see* filing 25-2 at 5-7, and Stone Strong of Texas was required to report sales and pay the license fees within 10 days after the end of each month, *see* filing 1-1 at 1. The Agreement provided, as relevant, that it could be terminated

>  (a) immediately by Stone Strong if [Stone Strong of Texas] fails to pay any License Fees within ten (10) days after the due date; (b) by mutual written agreement of the parties; [or] (c) by either party if the other party materially breaches any provision hereof and

fails to cure such breach within 30 days after receiving notice thereof from the nonbreaching party. . . .

Filing 1-1 at 3. Upon termination, Stone Strong of Texas was obliged to stop making and selling blocks (except for existing inventory), discontinue using the Stone Strong System and Stone Strong's trademarks, and immediately "cease to represent itself as an authorized Dealer of Stone Strong and [] otherwise desist from all conduct or representations that might lead the public to believe that [Stone Strong of Texas] is authorized by Stone Strong to sell the Blocks." Filing 1-1 at 3.

According to DuBois, the parties' actual conduct didn't always follow the letter of the Agreement:

> Since approximately 2008 when I began doing business as Stone Strong of Texas under my arrangement with Innovative Stone, as well as after entering into the Dealer Agreement with Stone Strong, LLC, the practice has been that I or [Stone Strong of Texas] would submit a monthly report to Stone Strong, LLC identifying concrete block that had been shipped to [Stone Strong of Texas] customers. However, it had always been the practice that [Stone Strong of Texas] would pay license fees, whether to Innovative Stone or to Stone Strong, LLC, sometime after [Stone Strong of Texas] received payment from its customer.

Filing 23-1 at 6. But DuBois does not dispute Stone Strong's core allegations: that Stone Strong of Texas stopped paying license fees accrued after June 2020, stopped reporting sales after January 2021, and didn't provide Stone Strong with proof of liability insurance in 2020. *See* filing 25-1 at 2.

Specifically, Stone Strong emailed DuBois on December 8, 2020 reminding him to provide a certificate of liability insurance. Filing 25-1 at 12-13. A text-messaged reminder followed on December 14. Filing 25-1 at 14. On January 6, 2021, Stone Strong emailed DuBois representing that a number of previous attempts to reach out had been unanswered, and that "Stone Strong of Texas is currently in default of your License Agreement" by virtue of several months' worth of past due license fees, monthly reports, and the missing certificate of liability insurance. Filing 25-1 at 15. On January 27, Stone Strong emailed again, expressing concern for DuBois' well-being and asking for follow-up. Filing 25-1 at 23.

On February 1, DuBois emailed Gran memorializing a January 28 conversation in which Stone Strong of Texas agreed to "pay the remaining fees for 2020 on or before February 23rd" and also "provide Stone Strong with a certificate of general liability in accordance with the license agreement." Filing 25-1 at 17; *see* filing 25-2 at 2. Stone Strong replied, advising that the remaining license fees for 2020 totaled $74,434.85. Filing 25-1 at 18-19. DuBois replied thanking Stone Strong for the information. Filing 25-1 at 18. Monthly reports for the previous December and January were finally submitted. Filing 25-1 at 10-11.

But February 23 came and went, and on February 24 Stone Strong text-messaged a reminder stating that it had "not received your payment in full as agreed" and asking for payment to be wired before the end of business that day. Filing 25-1 at 19. On February 26, another text message: "We have not heard from you . . . or received payment or your insurance certificate. I highly recommend you call us today." Filing 25-1 at 20.

That didn't happen, culminating in a March 4 letter from Stone Strong's counsel demanding immediate payment of delinquent license fees and

- 5 -

informing Stone Strong of Texas that because of its breach, Stone Strong was terminating the Agreement. Filing 10-1 at 20-21. The letter reminded Stone Strong of Texas of its obligation to stop using Stone Strong's marks. Filing 10-1 at 21. But Stone Strong did grant limited consent for Stone Strong of Texas to continue using the marks to complete outstanding orders and sell existing inventory, subject to promptly providing a list of outstanding orders and paying license fees on any sales. Filing 10-1 at 21-22. Stone Strong of Texas was given until May 15 to "wind down" its use of Stone Strong's trademarks. Filing 10-1 at 22.

On April 6, counsel for Stone Strong emailed DuBois following up on the demand letter. Filing 10-1 at 26. On April 21, DuBois answered, stating that he was "currently working on a response[.]" Filing 10-1 at 25. But on April 29 and May 11, counsel had to reply to ask whether a response was forthcoming. Filing 10-1 at 24-25. On May 13, DuBois finally indicated that he was "waiting on his lawyer" and "should have something for you tomorrow." Filing 10-1 at 24. If there eventually was a response, it's not in the Court's record. And Stone Strong has presented evidence that Stone Strong of Texas is continuing to refer to itself as such and use Stone Strong's registered marks. *See* filing 10-1 at 23, 27; filing 10-2; filing 25-2 at 13-14. Stone Strong would like the Court to order it to stop. Filing 8.

## DISCUSSION

A preliminary injunction is an extraordinary remedy and the party seeking injunctive relief bears the burden of proving that the relevant factors weigh in its favor. *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1015 (8th Cir. 2020). A plaintiff seeking a preliminary injunction must establish four factors showing such relief is warranted: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence

of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.*; *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc). No single factor is dispositive, and the burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994); *see Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### LIKELIHOOD OF SUCCESS ON THE MERITS

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). The absence of a likelihood of success on the merits suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). But a party seeking injunctive relief need not necessarily show more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008).

Stone Strong's claims here include breach of contract, misappropriation of confidential information and trade secrets, and trademark and unfair competition claims mostly brought under the Lanham Act, 15 U.S.C. § 1051 *et seq*. *See* filing 1. But Stone Strong's motion for preliminary injunction is focused on the use of its marks, so the Court focuses on Stone Strong's trademark claims and the breach of contract claim (because the Agreement conferred a license to use the trademarks).

Likelihood of confusion is the hallmark of any mark infringement claim, it's necessary to prevail on claims for mark infringement under § 1114(1) and unfair competition under § 1125(a). *Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305, 1308 (8th Cir. 1997); *see also A & H Sportswear, Inc. v.*

*Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 n.5 (3d Cir. 2000). To prevail on a claim of mark infringement under § 1114(1), plaintiffs must establish that they own a valid, protectable mark and that there is a likelihood of confusion between their mark and the defendant's mark. *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009). Similarly, § 1125(a)(1), which offers protection to marks regardless of federal registration, prohibits the use of a mark in connection with goods or services in a manner likely to cause confusion as to the source or sponsorship of the goods or services. § 1125(a)(1); *see also Davis v. Walt Disney Co.*, 430 F.3d 901, 903 (8th Cir. 2005). In essence, on the present facts, the elements for a claim of infringement and a claim for unfair competition are identical. *See*, *e.g.*, *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2. (9th Cir. 1992).

Stone Strong's evidence establishes those elements: ownership of the trademarks and the likelihood of confusion are clear. Stone Strong of Texas offers only one defense that speaks directly to these issues—it argues that Stone Strong of Texas established common-law rights to the name "Stone Strong of Texas" as early as 2008, without a license agreement. Filing 22 at 6.

But just because there wasn't a *written* agreement doesn't mean there wasn't a license: the record is clear—from DuBois' own averments—that Stone Strong of Texas began operating as such with permission from Stone Strong, and that Stone Strong of Texas was paying for the right to market Stone Strong products. *See* filing 23-1 at 3-4. In effect, Stone Strong of Texas was already licensing Stone Strong's marks. And in any event, Stone Strong of Texas admits it later licensed the marks, meaning that the merger principle applies: A licensee's prior claims of any independent rights to a trademark are lost, or merged into the license, when he accepts his position as licensee, thereby

- 8 -

acknowledging the licensor owns the marks and that his rights are derived from the licensor and enure to the benefit of the licensor. *Hot Stuff Foods, LLC v. Mean Gene's Enters., Inc.*, 468 F. Supp. 2d 1078, 1095 (D.S.D. 2006).

It is true that a common-law mark owner whose use antedated the mark's registration but post-dated the registrant's use in other areas has exclusive rights in the area preempted by the common-law owner. *Wrist-Rocket Mfg. Co. v. Saunders Archery Co.*, 578 F.2d 727, 731 (8th Cir. 1978). But it's apparent that Stone Strong was the senior user of its marks in commerce, even in Texas: it was doing business there before Stone Strong of Texas even existed.[1] Filing 23-1 at 2.

Stone Strong of Texas' primary arguments actually arise under the Agreement: it insists that Stone Strong didn't validly terminate the Agreement, so it still has a license to use Stone Strong's marks. Filing 22 at 3-6. Those arguments aren't persuasive either. First, Stone Strong of Texas argues that the Agreement is silent as to when license fees should be paid. Filing 22 at 5. But even where a contract is silent with respect to time of performance, a reasonable time for performance will be presumed or implied by law. *Gustav Thieszen Irrigation Co. v. Meinberg*, 276 N.W.2d 664, 666 (Neb. 1979).[2] And this contract isn't silent: "Within 10 days after the end of each

---

[1] Stone Strong of Texas points to the fact that "Stone Strong" standing alone wasn't registered until 2018. Filing 22 at 6; *see* filing 10-1 at 12. But "Stone Strong Systems" was registered all the way back in 2004, and it doesn't take much squinting to see how "Stone Strong of Texas" might infringe that mark. *See generally Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010) (explaining 6-factor test to evaluate likelihood of confusion). Stone Strong also has a colorable argument that its later-registered marks should be tacked. *See Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 910 (2015).

[2] The Agreement contains a choice-of-law provision specifying Nebraska law, filing 1-1 at 4, and when neither party raises a conflict of law issue in a diversity case, the federal court

month," Stone Strong of Texas was to provide Stone Strong with a statement of products sold during the previous month and "the payment of the License Fees owed for such sales." Filing 1-1 at 1. Even setting that aside, the Agreement provided for "a minimum annual License Fee of $50,000.00 to be paid prior to the end of each 12-month period during the Term." Because the Agreement was effective January 1, 2016, those 12-month periods were the same as calendar years, and here, Stone Strong of Texas didn't make that minimum payment for 2020.

DuBois also avers that the parties' practice was actually for Stone Strong of Texas to remit payment only after it had been paid by its customers. Filing 23-1 at 6. But even assuming that reflects the parties' interpretation of the contract, it's not an eternal excuse for nonpayment. See *D. K. Meyer Corp. v. Bevco, Inc.*, 292 N.W.2d 773, 775-76 (Neb. 1980). Instead, it again simply provided a reasonable time for Stone Strong of Texas to obtain payment from its customers and, in turn, make its own payment. See *id*. at 776-77. It's hard to see how the delay that precipitated termination would be considered reasonable, and Stone Strong of Texas doesn't argue that it was.

Stone Strong of Texas also takes issue with the manner in which the Agreement was terminated: the Agreement, it argues, required 30 days' notice and opportunity to cure as a condition precedent to termination. Filing 22 at 5. And the Agreement does provide for termination "if the other party materially breaches any provision hereof and fails to cure such breach within 30 days after receiving notice thereof from the nonbreaching party[.]" Filing 1-1 at 3. But that's just for breaches *other* than non-payment of license fees—for

---

simply applies the law of the state in which the federal court sits, see *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n.3 (8th Cir. 2003).

those, the Agreement permitted termination by Stone Strong immediately if Stone Strong of Texas missed a payment by 10 days. We're certainly there.

And even if the notice provision was in play, Stone Strong more than satisfied that condition. It's obvious that Stone Strong was trying to maintain a cordial relationship with Stone Strong of Texas, but the record described above shows repeated communications, in increasingly straightforward terms, demanding sales statements, payment, and proof of insurance. And the January 6, 2021 email quite expressly warned Stone Strong of Texas that it was "in default of [its] License Agreement." Filing 25-1 at 15. It had not just 30 days, but several months worth of notice of the alleged breaches.

But perhaps the simplest way to look at Stone Strong's likelihood of success on the merits of this case is to take a bigger view: Stone Strong owns intellectual property that Stone Strong of Texas is using . . . without paying for the right to do so. It's hard to see how that ends well for Stone Strong of Texas.

### IRREPARABLE HARM

But a preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009).

Stone Strong relies on authority stating that irreparable harm can be presumed if the plaintiff has shown a likelihood of consumer confusion. *See Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus*

*Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011); *Gen. Mills, Inc. v. Kellogg Co.,* 824 F.2d 622, 624 (8th Cir. 1987). But there is reason to question that authority. *See MPAY*, 970 F.3d at 1019 (citing *Winter*, 555 U.S. at 22; *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392-93 (2006); *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019) (same); *see also Buetow v. A.L.S. Enters., Inc.*, 650 F.3d 1178, 1183 (8th Cir. 2011). The Eighth Circuit has, in fact, noted that district courts in this circuit—including this one—have "understandably declined to treat the presumption as good law." *MPAY*, 970 F.3d at 1019 n.2 (citing *Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 994 n.5 (D. Neb. 2018); *Se. X-Ray, Inc. v. Spears*, 929 F. Supp. 2d 867, 872 (W.D. Ark. 2013)). And it's now generally recognized by circuit courts to have confronted the question that there is no such presumption. *See Hoop Culture, Inc. v. GAP Inc.*, 648 F. App'x 981, 985 (11th Cir. 2016); *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 217 (3d Cir. 2014); *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013); *cf. Bethesda Softworks, L.L.C. v. Interplay Ent. Corp.*, 452 F. App'x 351, 355 (4th Cir. 2011).

But even if there was such a presumption, Stone Strong would not be entitled to it, because it did not promptly seek preliminary injunctive relief concerning the infringement. *See Phyllis Schlafly Revocable Trust*, 924 F.3d at 1010. In fact, delay in moving for preliminary injunctive relief negates any presumption of irreparable harm based on consumer confusion and may, standing alone, justify denial of preliminary injunctive relief. *Id.*

So, for instance, in *Novus Franchising, Inc. v. Dawson*, a franchisor was unable to show irreparable harm when it waited several months after its franchisee stopped paying royalties to terminate the franchise agreement, and several months after that to file suit seeking to enjoin the franchisee's use of

its marks. 725 F.3d 885, 889 (8th Cir. 2013). The Eighth Circuit agreed with the franchisee that the franchisor's "failure to seek injunctive relief for a period of seventeen months after [the franchisee] quit paying royalties vitiates much of the force of [the franchisor's] allegations of irreparable harm." *Id.* at 895.

Similarly, in this case, Stone Strong of Texas stopped paying license fees after June 2020. But Stone Strong waited until March 2021 to terminate the Agreement, and even then gave Stone Strong of Texas another 2 months or so to "wind down" its trademark use, and then waited another three months or so after that to sue and seek injunctive relief. That's not to say that Stone Strong did anything improper—rather, it's simply to note that Stone Strong of Texas isn't alleged to be doing anything now that it wasn't doing all along, and 15 months is a long time to tolerate putatively irreparable harm. *See id.* at 895.

Stone Strong also argues that its reputation and goodwill are at issue, and that Stone Strong of Texas' "infringement has subjected Stone Strong to irreparable harm and damage separate and apart from any licensing fees that are owed from the period during which the Dealer Agreement was effective; such damages cannot be adequately compensated through money damages alone." Filing 24 at 9-10. But "beyond just asking the [C]ourt to trust its assessment that these harms are unquantifiable, it never persuasively explained why money damages could not compensate it for these losses as well." *Mgmt. Registry, Inc. v. A.W. Cos.*, 920 F.3d 1181, 1184 (8th Cir. 2019); *see also Novus Franchising*, 725 F.3d at 894-95.

Customer goodwill is not truly "irreparable," in the sense that it can be addressed through money damages after a trial on the merits. *Novus Franchising*, 725 F.3d at 895; *see World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 161 (2d Cir. 2012). And perhaps most importantly, the parties previously contracted for the pecuniary value of a

license to use Stone Strong's intellectual property: there is no reason it couldn't be done again. *See eScholar LLC v. Neb. Dep't of Educ.*, 497 F. Supp. 3d 414, 432 (D. Neb. 2020).

In short, it is Stone Strong's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *see Minn. Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). Stone Strong has failed to carry that burden.

### BALANCE OF HARMS AND PUBLIC INTEREST

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase*, 640 F.2d at 114. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter*, 555 U.S. at 24.

Here, the balance of harms tips toward Stone Strong of Texas: it's presented evidence that a preliminary injunction would be "financially devastating," *see* filing 23-1 at 7, which would have the effect of mooting several of the parties' claims before they have been decisively addressed on the merits, *see Colo. Sec. Consultants, LLC v. Signal 88 Franchise Grp., Inc.*, No. 8:16-CV-439, 2017 WL 1047260, at *4 (D. Neb. Mar. 17, 2017). Stone Strong of Texas has also presented evidence that it has outstanding obligations to customers that would be disrupted by an injunction, *see* filing 23-1 at 7, and those customers haven't done anything wrong.[3] While the Court acknowledges Stone

---

[3] Stone Strong suggests that those customers could still be served, even if use of its marks was precluded. *See* filing 24 at 12. Perhaps, perhaps not—but it's hard for the Court to say

- 14 -

Strong's suggestion that Stone Strong of Texas brought this on itself, that suggestion rests on assuming the merits of Stone Strong's claims—and while the Court finds those claims are likely to succeed, they haven't succeeded yet.

Finally, the Court notes that the primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789-90 (8th Cir. 1989); *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). The burden on a movant to demonstrate that an injunction is warranted is heavier when granting the preliminary injunction will in effect give the movant substantially the relief it would obtain after a trial on the merits. *Rathmann*, 889 F.2d at 790; *see Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993).

Stone Strong asks the Court to disrupt the long-standing status quo here.[4] The Court declines to do so, despite Stone Strong's likelihood of success on the merits, where Stone Strong has failed to show an irreparable injury and the balance of harms is against it.

## CONCLUSION

Accordingly, the Court will deny Stone Strong's motion for a preliminary injunction. But this isn't all good news for Stone Strong of Texas: while the Court's assessment of the merits of this case is obviously preliminary, it's also

---

without knowing more about how the "Stone Strong System" works as a whole. This factor doesn't weigh heavily in this case in any event.

[4] Stone Strong suggests that when it terminated the Agreement, it terminated Stone Strong of Texas' right to use its marks—so, it says, "entry of injunctive relief prohibiting Defendant from using Stone Strong's trademarks would preserve the status quo of the parties as it exists today." Filing 24 at 10. That's not what "status quo" means. Stone Strong of Texas is doing things, and Stone Strong wants the Court to stop them. That's a change to the status quo.

- 15 -

not promising for Stone Strong of Texas. The Court's denial of *preliminary* injunctive relief doesn't preclude injunctive relief in a final judgment—soon—and was based on the availability of money damages, so Stone Strong of Texas should be cognizant: the meter is running. Both parties would be well-served if this case was swiftly and respectfully resolved. In the meantime, however,

> IT IS ORDERED that Stone Strong's motion for preliminary injunction (filing 8) is denied.

Dated this 8th day of October, 2021.

BY THE COURT:

John M. Gerrard
United States District Judge